*OPINION.
That the question controverted 'between the parties, in this cause, which is, in truth, a question between british creditors, on one side, and the assignees of a british debitor or debitors, declared a bankrupt or bankrupts, according to the laws of their country, on the other side, discussed before an american court, should be decided by those principles which ought to govern the decision, if the same question were discussed before an english court; and that by the english statutes concerning bankrupts, all the personal property of a bankrupt, wherever it be, is so transferred to the assignees that an english subject cannot recover a debt, contracted before the assignment, by an action against the bankrupt himself, or satisfaction for it out of his effects in the hands of others, although a creditor, who is not a british subject, and consequently not bound by the laws of Great Britain, (a) and perhaps too a british *275 subject not having a domicilitun in fi}ng-
land, (b) may recover such debt, by an action against the bankrupt, or satisfaction for it out of his effects.
In consequence of which opinion the bill was dismissed.

 upon the principles stated in the note (e) to the case between Page, executor of Cary, plaintiff, and Pendleton, &c., defendents, the english statute laws bind english subjects and regulate their personal rights every where, unless the case mentioned in the next following note to this case may be an exception, if an english subject die intestate, his relations, whom the english statute of distribution appoint to succede, will be in titled to his personal estate which may, at that time, be in Virginia, not those relations whom our statute of distribution, so far as it differs from the english, appoints; for example; brothers and sisters of the half blood will share equaly by the one. and but half so much by the other. &c. if an english trader be declared a bankrupt, and his estate be assigned by those who have the administration of such affairs, in that country, the title of the assignees would be supported, in the courts of this country, and the right of such creditors as are subject to the laws of England would be bound by the assignment.
If the bankrupt happen to have property which lies out of the jurisdiction of the law of England, if the country, in which it lies, procede according to the principles of well regulated justice, there is no doubt but it will give effect to the title of assignees, by Loughborough, H. Blackstones, reports, p. 691. this position is too general, and is not sufficiently qualified by what follows it in p. 693.
Solomons vs. Ross, in canc. 26 january, 1764, before mr. justice Bathurst, who sat for lord chancellor Northington. messieurs Deneufvilles, merchants and partners at Amsterdam, corresponded with Michael Solomons and Hugh Ross, merchants in London, on the 18 day of december, 1759, the Deneufvilles stoped payment, on the 1 day of janu-ary, 1760, the chamber of desolate estates in Am ster-dam took cognizance thereof, and, on the next day. they were declared bankrupts, and curators or assignees appointed of their estates and effects, on the 20 day of december, 1759, Ross, who, was a creditor of the bankrupts to the amount of near *3000 pounds, made an affidavit of his debt in the mayors court of London, and attached their moneys in the hands of Michael Solomons, who was their debitor to the amount of 1200 pounds, on the 8 day of march, 1760, Ross obtained judgment, by default, on the attachment, and thereupon a writ of execution was issued against Michael Solo-mons, who was taken into execution, but, being unable to pay the 1200 pounds, gave Ross his note *275 oayable in a month; on which Boss? caused satisfaction to he entered on the records of the judgement, a few days after, one Israel Solomons, who had a power of attorney from the curators to act for them in England. filed a Ml], making himself and the 'Curators plaintiffs, praying that the defendent Michael Solomons might account with them for the effects ot the bankrupts, which were in his hands, might pay and deliver the same over to Israel Solo-mons for che use of the curators, and be restrained from paying or delivering them over to Boss. Michael Solomons then filed a bill, by way of inter-pleader, praying an injunction, and that he might be at liberty to bring the 1200 pounds into court, this money was accordingly paid into the bank, in the name of the accountant general, persuant to an order in the court. The decree directed, inter alia, "that the stock purchased with the money paid into the bank should be transferred to Israel Solomons, for the benefit of the creditors of the bankrupts, and that Boss should deliver up the note, given by Michael Solomons for 1200 pounds, to be canceled.* H. Blades tone, p. 131. in the notes.
Similar decrees were made in two other cases there stated.
The principle of the decrees doth not appear.
In the first and second, it is supposed to be this; the laws of Holland divest the bankrupts property out oí him, and vest it in the curators or assignees, in that country, for the purpose of distributing the property among his creditors, and that the assignment comprehended the bankrupts right to moneys ■due to them in .England: for
It is a clear proposition, said Hough boro ugh, H. Blackstone, p. 690, not only of the law of England, but, ot every country in the world, where law has the semblance of science, that personal property has no locality, the meaning of that is, not that personal property has no visible locality but that it is subject to that law which governs the owner.
This proposition is not free from ambiguity, the sense intended by the author of it is believed lobe this: that the owners right to a persona.! thing, which is in one country, is subject to disposition of the law of another country, whereof the owner is a member; and, in that sense, is admitted to be true, with respect to the owner himself, and to all other people who are members of the saíne state with him; but is not admitted to be true with respect to men who are not members of the same community,
The writer of these notes, differing in this point with three capital english judges, is aware, that he •will be regarded with a fastidious eye by men. whose veneration for the westmonasterian oracles is equal to the veneration of the antienls for the dodonaen and delphic oracles; but, when he has reason, the only despot, *to which he professeth unconditional submission, on his side, he will venture to differ with any man. he disapproves the determination in the case between Solomons and Ross, on these considerations,
1. That Hess, if he were an english subject, as he is supposed to have been, was not bound by the laws of Holland, this is assumed for a proposition incontrovertible.
3. That a creditor, in justice, hath a right to so much of his debitors estate as is equal to the demand. or to a proportion of the estate, if it be not sufficient -To satisfy the demands o f all the creditors, the truth of this proposition is admitted, by the bankrupt laws both of England and Holland, appointing the assignees in one. and the curators in the other, distributors of the estate among the creditors; so that the assignees and curators are the trustees for and representatives of the creditors, and are chosen by them in one, and, perhaps, in the other too.
«3. The law which authoriseth this appointment, if it do not bind the foreign creditor, can not legaly deprive him of his right to recover what is due to him, because the law was enacted without his consent, either individually, or as a member ot the community.
4. The right of Boss to satisfaction for his demand against Deneufvilles out of moneys in the hands of Solomon their debitor, whether, in Honghboroughs language, it had or had not locality, was as much subject to the law which governed Ross, that is the law of England, as the right of the bankrupts to the same moneys was subject to the law which governed the Deneufvilles. the owners, that is the law of Holland; and, by the law of England, Ross was authorised to procede as he did to attach those moneys — now where such an opposition between two laws upon the same subject happeneth, why the law of Holland, which favoured the right of the curators, .should prevail against the law of England, which favoured the right of the english creditor, or, in other wor ds, why the court should have prefered the title of the curators to the title of the creditor using the process of attachment, is not discerned.
The most just mode seemeth to be. in whatever court the matter be discussed, to accomodate it by a proportionable distribution of the bankrupts effects among all the creditors of every country.
If the assignees of an english bankrupt bring suits in this court to recover money due from his debitors, and parties, not english subj eels, demand a satisfaction of their demands out of the same money, the court will appoint a receiver of the money and not allow the assignees any part thereof, until they shall have thrown the effects collected by them into a common fund, for the benefit of all the creditors. —Note in edition of 1795.

 Because, 1, such a subject is not represented in the the british parliament, and, therefore, as is conceived, ought not to be bound by its acts, although the english courts have determined otherwise, and the american courts too, before the late revolution, admitted british subjects, residing iu the plantations, as they were then called, to be bound by acts of parliament, the terms of which specialy comprehended the plantations, and 2. The bankrupts effects in England may be all distributed among the creditors there, in some cases, before the creditors in the plantations could have notice of the bankruptcy in time to clame their shares.--’Note in edition of 1795.